UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DONNELL HOLMES,

    Plaintiff,

v.                                      Case No. 2:07-cv-32
                                          HON. GORDON J. QUIST

DAVID WENTWORTH, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Donnell Holmes filed this prisoner 42 U.S.C. § 1983 action against defendants Lt. Lamphere, Captain Allen, ADW Huff, Warden J. Preslesnik and J. Armstrong. Plaintiff alleges that while he was confined at the Michigan Training Unit, he was placed in segregation for 21 days for allegedly practicing his religious beliefs. Plaintiff alleges that he was a member of the Moorish Science Temple of America and was in possession of religious material that was approved by the Michigan Department of Corrections. Plaintiff alleges that he suffered emotional distress when he was placed in segregation for possessing these materials. Plaintiff was then transferred to a different facility.

Plaintiff alleges that defendant Wentworth wrote a notice of intent and placed plaintiff in segregation. Defendant Lamphere reviewed the notice of intent with plaintiff. Defendant Allen ignored plaintiff's complaint, and defendant Huff denied plaintiff's grievance and failed to investigate. Plaintiff alleges that Warden Prelesnik and grievance coordinator J. Armstrong failed to investigate his complaint.

Presently before the Court is Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff alleges that his Eighth Amendment rights were violated when he was placed in segregation. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9(1992) (quoting *Rhodes*, 452 U.S. at 347; *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although it is clear that Plaintiff was denied certain privileges as a result of his administrative segregation, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *8 (6th Cir. Aug. 23, 2000), *cert. denied*, 531 U.S. 1023 (2000); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug.11, 1999). Moreover, Plaintiff cannot not bring an

Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury.  *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Watson v. McClanahan*, No. 99-6124, 2000 WL 922899, at *2 (6th Cir. June 27, 2000); *Benson v. Carlton*, No. 99-6433, 2000 WL 1175609, at *1 (6th Cir. Aug. 9, 2000).  As such, Plaintiff fails to state an Eighth Amendment claim against Defendants.

Plaintiff alleges that his First Amendment rights were violated by the confiscation of his Moorish Science Temple of America documents.  The standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25.  In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning institutional operations." *Id*. at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91.  First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id*. at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984).  Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90.  Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90.  Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90.  As stated by the court, this final factor "is not a 'least restrictive alternative' test." *Id*. at 90.  "Prison officials need not show that no reasonable method exists by which

[prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

Plaintiff asserts that defendants violated his constitutional rights. However, the materials that were discovered in plaintiff's cell were confiscated because they outlined a possible militant organization and were in violation of prison rules. There was also a recruitment letter that was confiscated. The documents were considered a threat to the security of the prison in violation of Policy Directive 03.03.130. Plaintiff's second step grievance response explained why he was placed in temporary segregation and reclassified:

> The Notice of Intent (CSJ-282) states that you had questionable material relating to the Moorish Science Temple of America and were appearing to organize a militant group. A Security Classification Committee hearing was held on 6/1/06. At the hearing, it was determined that you could not be managed in general population and recommended a transfer to an alternate Level II facility. This transfer was approved by CFA. You were held in temporary segregation pending transfer. There is no policy violation regarding your stay in segregation.

The documents in plaintiff's possession described a militant organization with an alternative power structure within the prison. As a result, it was determined that plaintiff was attempting to organize a militant group within the prison. Plaintiff was placed in temporary segregation and given a higher security classification. In the opinion of the undersigned, defendants had valid security reasons to take action against plaintiff.

Alternative means existed for plaintiff to pursue his legitimate religious beliefs. Plaintiff cannot show that the prison policy is unreasonable. Further, the security interests set forth by defendants are essential to managing a prison environment. Thus, it is clear that there was a valid, rational connection between plaintiff's temporary segregation and classification status, and that such a designation was reasonable. *Turner*, 482 U.S. at 90. As noted above, any First Amendment rights

retained by prisoners upon incarceration must yield to "the legitimate penological objectives of the corrections system," such as order, security, or rehabilitation. *Turner*, 482 U.S. at 89. Therefore, in the opinion of the undersigned, defendants have met their burden with regard to Plaintiff's First Amendment claims. Accordingly, the undersigned recommends that defendants' motion for summary judgment be granted as to those claims.

Defendants Allen, Huff, Prelesnik Armstrong and Lamphere assert that they lack personal involvement in the underlying allegations in plaintiff's complaint. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim

requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990). Plaintiff has not established that any of these defendants were involved in the alleged deprivation of rights. At best, these defendants were involved in responding to plaintiff's grievance complaints. In the opinion of the undersigned, defendants Allen, Huff, Prelesnik, Armstrong and Lamphere are entitled to dismissal for lack of personal involvement.

Defendants argue that they are entitled to Eleventh Amendment immunity for claim in their official capacities and qualified immunity for claims in their individual capacities. Plaintiff's official capacity claims are barred by the Eleventh Amendment. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989); *Cory v. White*, 457 U.S. 85, 90 (1982); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This

would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action

to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion of the undersigned, defendants are entitled to qualified immunity because plaintiff has failed to show any violation of his constitutional rights.

Defendants Lamphere, Huff, Prelesnik and Armstrong move to dismiss the case against them without prejudice because plaintiff failed to exhaust his grievance remedies against them. Plaintiff exhausted his grievance remedies against defendants Wentworth, Lake and Allen, but he failed to name defendants Lamphere, Huff, Prelesnik and Armstrong in his grievances.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must

exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1] sets forth the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue with the staff member involved, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process, and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ X. The Policy Directive also provides the following directions for completing grievance forms: "[t]he issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

---

[1]The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the Policy Directive was in effect at all times applicable to this lawsuit.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

The Supreme Court held in *Woodford*, 126 S. Ct. at 2387, that the PLRA exhaustion requirement requires "proper exhaustion." "Proper exhaustion" means that the plaintiff complied with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances. *Id.* at 2386-388. It is a precondition to any suit challenging prison conditions. *Id.* Therefore, following *Woodford,* if a plaintiff's grievance was not filed in a timely manner pursuant to the state's administrative rules, the plaintiff has not properly exhausted his administrative remedies and the claim is barred. The Supreme Court's recent decision regarding PLRA exhaustion, *Jones,* 127 S. Ct. at 922, did not modify this holding regarding "proper exhaustion." To the contrary, the Court drew upon the reasoning of *Woodford* when it struck down the Sixth Circuit's rule barring

prisoners from bringing suit against any defendant whom the prisoner had not named in a Step I administrative grievance:

> In *Woodford,* we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," 548 U.S., at ___, 126 S.Ct. 2378 (slip op., at 5)--rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. As the MDOC's procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted.

*Jones,* 127 S. Ct. at 922-23.[2] The Court in *Jones* also struck down the Sixth Circuit's total exhaustion rule, finding that a district court may proceed on a prisoner's exhausted claims and dismiss the unexhausted claims. *Id.* at 924-26. Finally, the *Jones* Court overturned the Sixth Circuit's requirement that prisoners must specifically plead or demonstrate exhaustion in their complaints. *Id.* at 921. Rather, the *Jones* Court held that a prisoner's failure to exhaust is an affirmative defense under the PLRA. *Id.* Defendants Lamphere, Huff, Prelesnik and Armstrong have met their burden of demonstrating that plaintiff failed to exhaust his remedies against them.

Accordingly, it is recommended that defendants' Motion to Dismiss (Docket # 9) be granted and that defendants Lamphere, Huff, Prelesnik and Armstrong be dismissed without prejudice. It is further recommended that Defendants' Motion for Dismissal and/or Summary

---

[2] As "the MDOC's procedures make no mention of naming particular officials," the *Jones* Court held that "the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted." *Jones*, 127 S. Ct. at 923. The *Jones* Court, however, dealt with MDOC Policy Directive 03.02.130, effective November 1, 2000. In that version of MDOC Policy Directive 03.02.130 there was no requirement that particular officials be named in a Step I grievance.

Judgment (Docket #11) be granted dismissing defendants Wentworth, Lake and Allen with prejudice and that this case be dismissed in its entirety.

      NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated:   February 13, 2008